UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY<br>962 Wayne Ave, Suite 610<br>Silver Spring, MD 20910,<br><br>COALITION TO PROTECT AMERICA'S NATIONAL PARKS<br>2 Massachusetts Ave NE, Unit 77436<br>Washington, DC 20013,<br><br>BASIN AND RANGE WATCH<br>c/o Kevin Emmerich<br>64 Highway 95<br>Beatty, Nevada 89003,<br><br>JOHN HISCOCK,<br>1502 South McAllister Dr.<br>Kanab, UT 84741,<br><br>*and*<br><br>MARK FRANKLIN<br>2914 Junction St.<br>Durango, CO 82301,<br><br>    *Plaintiffs*,<br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR<br>1849 C Street NW<br>Washington, DC 20240<br><br>NATIONAL PARK SERVICE<br>1849 C St NW<br>Washington, DC 20240,<br><br>BUREAU OF LAND MANAGEMENT,<br>1849 C Street NW<br>Washington, DC 20240,<br><br>*and* | Civil Action No. 24-cv-3420<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

DEB HAALAND,
in her official capacity as Secretary,
United States Department of the Interior
1849 C Street NW
Washington, DC 20240;

    *Defendants*.

# INTRODUCTION

1. Plaintiffs Public Employees for Environmental Responsibility, the Coalition to Protect America's National Parks, Basin and Range Watch, John Hiscock, and Mark Franklin (collectively "Plaintiffs") are suing the United States Department of the Interior, its subagencies National Park Service (NPS) and Bureau of Land Management (BLM), and its Secretary Deb Haaland (collectively "Defendants") for being nineteen years overdue on fulfilling their mandatory duty to submit to Congress a "comprehensive plan for the management, and use of the trail," commonly and herein referred to as a Comprehensive Management Plan (CMP) for the Old Spanish National Historic Trail ("the Old Spanish Trail" or "the Trail") as required by the National Trails System Act, 16 U.S.C. §1241-1251 (1968, as amended); s*ee* 16 U.S.C. § 1242(f). Pursuant to the Administrative Procedure Act (APA), 5 U.S.C. §§551-559 the court "shall" "compel agency action unlawfully withheld or unreasonably delayed." APA Section 706(1).

2. Plaintiffs are also suing Defendants for failing to fulfill their mandatory duty to "select the rights-of-way" for the Old Spanish Trail and "publish notice of the availability of appropriate maps or descriptions in the Federal Register" as required by a separate provision of the National Trails System Act, 16 U.S.C. §1246(a)(2). This failure also

      constitutes an action unlawfully withheld or unreasonably delayed which the court must compel pursuant to APA Section 706(1).

3. The Old Spanish Trail is a national treasure that traces a historical corridor of travel used first by Native American Tribes and then by Mexican and American explorers, traders, and settlers. As it runs from Santa Fe, New Mexico, to Los Angeles, California, the Trail's congressionally designated routes traverse the rugged landscapes of the American Southwest. It is more than mere routes; the Trail is a living museum of the cultural confluence of the different groups that used it. Congress established it as a national historic trail landscape, intended to preserve cultural, natural, scenic, and recreational values and opportunities for all Americans.

4. Without a right-of-way and a CMP, including the required environmental review process pursuant to the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq*. (NEPA), ad-hoc land management decisions have chipped away at the Trail's values over the years. Old Spanish Trail advocates, including some of the Plaintiffs in this case, have submitted comments and/or protests on at least thirty-eight federal land management plans, actions, and projects, the majority of which have resulted in detrimental impacts to the Trail. The review process for many of these actions ignored the existence of the Old Spanish Trail entirely, and in almost every instance failed to assess whether the actions as proposed would substantially interfere with the nature and purposes of the Trail as required by the National Trails System Act at 16 USC 1246(c).

5. These projects have cumulatively eroded the public's opportunities to experience and appreciate the Trail's historical, cultural, natural, and recreational values. Plaintiffs and their members use and wish to use segments of the Trail that are currently under

consideration for various development projects the cumulative impacts of which, in the absence of a CMP and National Trail System Act right-of-way, Defendants are not considering as Congress required.

6. Accordingly, Plaintiffs bring this lawsuit to compel Defendants to undertake their overdue mandatory duties under the National Trails System Act.

## JURISDICTION

7. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 (federal question), § 1346(a)(2) (federal defendant), and § 1361 (action to compel federal employee). This Court has authority to order the declaratory relief requested under the Declaratory Judgment Act, 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes it to issue injunctive relief.

8. This complaint states claims under the Administrative Procedure Act, 5 U.S.C. §701 *et. seq.*, which authorizes federal courts to compel agency actions wrongfully withheld or unreasonably delayed. *Id*. § 706.

## VENUE

9. Venue is properly vested in this court under 28 U.S.C. § 1391(e) because Defendants reside in this judicial district, plaintiff PEER is incorporated in this district, and because a substantial part of the acts and omissions giving rise to this claim occurred in this district.

## PARTIES

10. Plaintiff PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY (PEER) is a national nonprofit organization, based in the Washington, D.C. area with field offices throughout the United States. PEER serves current and former federal and state employees of land management, wildlife protection, and pollution control agencies who seek to promote an honest and open government and help hold governmental agencies

accountable for faithfully implementing and enforcing the environmental laws entrusted to them by Congress. PEER supporters include thousands of local, state, and federal government employees nationwide, in addition to ordinary citizens. PEER staff and members use or plan to use the Old Spanish Trail for activities such as hiking, camping, and appreciating history and nature. The continued failure of Defendants to establish a right-of-way and to complete a CMP for the Old Spanish Trail, including full NEPA analysis, injures these recreational and educational interests. PEER has commented on ten BLM land use proposals affecting the Old Spanish Trail, noting their deleterious effects on the Old Spanish Trail and the problematic absence of a CMP and right-of-way.

11. Plaintiff COALITION TO PROTECT AMERICA'S PARKS is a 501(c)(3) nonprofit organization that exists to inform and educate the public, the media, non-governmental organizations, elected officials, and governmental agencies about issues related to the National Park Service and System. Its over 3,000 membership is composed of current, former, and retired employees and volunteers of the National Park Service, with over 50,000 collective years of stewardship of America's most precious natural and cultural resources. The Old Spanish Trail passes through Great Sand Dunes National Park, Curecanti National Recreation Area, Glen Canyon National Recreation Area, Lake Mead National Recreation Area, Pipe Spring National Monument, Mojave National Preserve, and it is immediately adjacent to Arches National Park and Castle Mountains National Monument. The Old Spanish Trail is co-administered by the NPS. The NPS co-administration function is an NPS responsibility and like all the agency's responsibilities is of particular interest to the Coalition. The Coalition has identified several members who use and enjoy the Old Spanish Trail and who suffer cognizable injuries to their

aesthetic, recreational, and procedural interests due to the absence of a CMP with full NEPA review and the establishment of a National Trails System Act right-of-way. Ad-hoc land use permitting has degraded Coalition members' visitor experience and resulted in the loss of valuable natural and cultural resources in many places along the Old Spanish Trail that the members use or wish to use. Over the years, the Coalition has invested approximately 240 hours reviewing and commenting on proposals by the BLM that pose potential threats to the Trail – proposals that may well not have included such threats had a CMP and right-of-way been in place. Without a CMP/EIS and right-of-way, ad-hoc land development decisions along the Trail will continue to impact the recreational, aesthetic, educational, and financial interests of the Coalition and its members.

12. Plaintiff BASIN AND RANGE WATCH is a 501(c)(3) non-profit organization based in Nevada that works to conserve the deserts of Nevada and California, help local communities, and educate the public about the diversity of life, culture, and history of the ecosystems and wild lands of the desert. A major focus for Basin and Range Watch is commenting on proposals by federal and state agencies to open undisturbed habitat and public lands in its region to energy development. The Old Spanish Trail runs through the area that is the focus of Basin and Range Watch, and the organization has witnessed several actions over the years that have negatively impacted the Trail, including a solar project that completely wiped out a roughly three-mile-long segment of the Trail. Basin and Range Watch has commented on several land use proposals including on their negative impacts to the Old Spanish Trail. Members of the group visit portions of the Trail and have plans to do so in the future. Their aesthetic, recreational, educational, and

procedural interests will continue to be negatively affected until Defendants establish a right-of-way and complete a CMP for the Trail, including required NEPA review.

13. Plaintiff JOHN HISCOCK is a retired employee of the National Park Service who served over thirty-eight years total, for twenty-one years as Superintendent of Pipe Spring National Monument, which the Old Spanish Trail crosses, for three years as member and chairman of the Colorado Plateau Cluster of NPS areas, many of which are proximate or crossed by the Trail, and in other management capacities related to the Trail. For three years (2015-2018) he served as Manager of the nonprofit group Old Spanish Trail Association, a group of which he remains a lifetime member. From 2015-2020, he also served as a member of the Advocacy and Policy Committee of the Partnership for the National Trails System. He is a long time and regular user of the Trail, on which he monthly hikes, camps, and studies and appreciates nature and archeological sites. He is an avid student of the Trail's history and he visits specific sites of particular historical significance on the Old Spanish Trail at least twenty times per year. Plaintiff Hiscock has advocated for the Old Spanish Trail for years, including by personally drafting numerous public comments on federal planning and actions under NEPA and the National Historic Preservation Act. He also drafted and submitted comments on the development of the Comprehensive Administrative Strategy, discussed *infra* at 14-15, by the Old Spanish Trail's co-administrators, NPS and BLM. Plaintiff Hiscock has also coordinated unified comments among groups such as PEER and various trail advocacy groups. In his personal capacity and in concert with the Old Spanish Trail Association, he has filed thirty-eight comment letters, protests, and appeals of agency actions that would adversely impact Old Spanish Trail resources, values, and landscapes. Plaintiff Hiscock has

witnessed harms to the Old Spanish Trail that would have been lessened or prevented by a CMP with proper NEPA compliance and the establishment of a right-of-way, such as the approval of oil and gas leasing, solar development, vegetative habitat manipulation, and mining activities. The lack of a CMP and right-of-way also has led to a lack of or delay in developing and implementing recreational, interpretive, and educational resources for trail users. Plaintiff Hiscock is a member of both PEER and the Coalition to Protect America's National Parks.

14. Plaintiff MARK FRANKLIN is a long-time user of the Old Spanish Trail. Early in his career, he was an NPS park ranger at Bryce Canyon National Park, North Cascades National Park, and New River Gorge National River. He also worked for BLM in El Malpais National Monument. He eventually owned his own graphic design business, and through it developed extensive experience creating interpretive signage and wayside exhibits for federal land management agencies and partnership organizations. He has attended eighteen to twenty conferences about the Old Spanish Trail and has participated in countless training hours, stewardship training, and mapping workshops with historians and experts regarding certain segments of the Trail. He is additionally a lifetime member of the Old Spanish Trail Association where he served as Treasurer for eleven years, Colorado Director for four years, Vice President for four years, and Retail Sales Manager for twelve years. Plaintiff Franklin is also a member of plaintiff organizations PEER and the Coalition to Protect America's National Parks. He has submitted public comments as a concerned citizen on land use proposals affecting the Trail, including a proposal that ultimately resulted in the flooding of an area of the Trail when BLM created Lake Nighthorse in Southern Colorado. For the past thirty years, he has regularly used portions

of the Trail three to four times per year for hiking and appreciating the Trail's historical and natural features. He hopes to continue doing so at a similar rate in the future, but is concerned that negative impacts to the Trail will continue to increase without a proper CMP and established right-of-way.

15. Plaintiffs and their members regularly use, enjoy, and benefit from the Old Spanish Trail, including its historical, cultural, and natural resources, and plan to continue doing so in the future. However, they can only to do to the extent that those resources remain in place for them to enjoy and Defendants' failure to complete a CMP with proper NEPA review and establish a right-of-way for the Old Spanish Trail does not result in the obliteration or irrevocable alteration of these resources.

16. The above injuries will continue until the Court grants the relief Plaintiffs request.

17. Defendants have been charged by Congress with the duty to administer the National Trails System Act, including the mandatory duties at issue. Defendant Department of the Interior delegated responsibility for administration of the Old Spanish Trail to its subagencies Defendants National Park Service and Bureau of Land Management.

## STATUTORY AND FACTUAL BACKGROUND

### I. NATIONAL TRAILS SYSTEM ACT

18. The National Trails System Act (NTSA) established a national system of public trails that have particular scenic or historical value, referred to as National Scenic and National Historic Trails, respectively. 16 U.S.C. § 1241 *et seq.* Enacted in 1968, the NTSA aims to preserve "public access to, travel within, and enjoyment and appreciation of the open-air, outdoor access areas and historic resources of the Nation." 16 U.S.C. § 1241(a). The act itself established the Appalachian Trail and the Pacific Crest Trail as the initial

components of the system, and enabled Congress to designate additional trails. *Id*. § 1241(b).

19. With respect to National Historic Trails specifically, Congress intended these to be "extended trails which follow as closely as possible and practicable the original trails or routes of travel of national historic significance" that "shall have as their purpose the identification and protection of the historic route and its historic remnants and artifacts for public use and enjoyment." 16 U.S.C. § 1242(a)(3).

20. The NTSA requires that, "within two complete fiscal years" after a historic trail's designation, the responsible Secretary, after full consultation with affected federal land management agencies, the Governors of affected states, and the relevant Advisory Council established in a different portion of the NTSA, create "a comprehensive plan for the management, and use of the trail" and submit it to the Committee on Interior and Insular Affairs of the House of Representatives and the Committee on Energy and Natural Resources of the Senate. 16 U.S.C. § 1242(f). These are generally known as "Comprehensive Management Plans" or "Comprehensive Plans."

21. Pursuant to § 1244(f), such plan must include:

    a) "specific objectives and practices for the management of the trail, including the identification of all significant natural, historical, and cultural resources to be preserved; details of any anticipated cooperative agreements to be consummated with State and local government agencies or private interests; and … an identified carrying capacity of the trail and a plan for its implementation," *id*. § 1244(f)(1);

    b) "a process to be followed by the appropriate Secretary to implement the marking requirements established in section 1246(c) of this title," *id*. § 1244(f)(2);

    c) "a protection plan for any high potential historic sites or high potential route segments," *id*. § 1244(f)(3); and

    d) "general and site-specific development plans, including anticipated costs," *id*. § 1244(f)(4).

22. The NSTA defines "high potential historic sites" and "high potential route segments." *See* 16 U.S.C. § 1251(1)-(2).

23. The NSTA separately requires each trail's administering agency to designate the location and the width of the right-of-way across federal lands. 16 USC § 1246 (a)(2).

24. Right-of-way designation is customarily done through the CMP and is essential to creating a corridor of protection and maintaining the viewshed from each trail. For example, BLM Manual 6250 "National Scenic and Historic Trail Administration" (Sept. 14, 2012) states at § 1.6(a)(2) that a trail's right-of-way "is selected by the National Trail administering agency in the trailwide Comprehensive Plan and includes the area of land that is of sufficient width to encompass National Trail resources, qualities, values, and associated settings in order to further the purposes for which the trail was designated by Congress." That section further specifies that BLM, in selecting the right-of-way, "shall include the resources, qualities, values, and associated settings, (comprised of the scenic, historic, cultural, recreation, natural, and other landscape values of the land areas through which such National Trails may pass), and the primary use or uses." *Id*.

    **II.    ADMINISTRATIVE PROCEDURE ACT**

25. The Administrative Procedure Act (APA) gives any person adversely impacted by agency action a right to judicial review. 5 U.S.C. § 702.

26. The Administrative Procedure Act directs courts to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and to hold unlawful and set aside agency actions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id*., § 706(2)(A).

## FACTUAL BACKGROUND

### I. OLD SPANISH TRAIL DESIGNATION AND ABORTED CMP/EIS

27. Congress designated the Old Spanish Trail as a National Historic Trail on December 4, 2002. The Old Spanish Trail Recognition Act of 2002, 2002, Pub. L. No. 107-325, 2002 U.S.C.C.A.N. (116 Stat.). The designation defined the "line" of the Trail's routes as that depicted in the July 2001 Old Spanish Trail National Historic Trail Feasibility Study. *Id.*

28. Pursuant to 16 U.S.C. § 1242(f), the Secretary of the Interior was obligated to submit the Comprehensive Management Plan to Congress within two fiscal years of designation.

29. Two fiscal years after the date of the Trail's designation was September 30, 2005. As of today in December 2024, Defendants have not created or submitted to Congress a Comprehensive Management Plan, nor have they established a right-of-way for the Trail.

30. The Old Spanish Trail is "an approximately 2,700 mile long trail extending from Santa Fe, New Mexico, to Los Angeles, California, that served as a major trade route between 1829 and 1848." 16 U.S.C. § 1244(a)(23)(A).

31. In a June 2003 memorandum, the Secretary of the Interior assigned joint management of the trail to NPS and BLM. Memorandum: Administrative Authority for the Old Spanish National Historic Trail, from Secretary of the Interior Gale A. Norton to Director, Bureau of Land Management and Director, National Park Service (June 5, 2003).

32. In 2006, NPS and BLM began the scoping process for a CMP and accompanying environmental impact statement (EIS) pursuant to NEPA for the Old Spanish Trail.

        Notice of Intent to Prepare a Comprehensive Management Plan/Environmental Impact Statement for the Old Spanish National Historic Trail; New Mexico, Colorado, Arizona, Utah, Nevada, and California, 71 Fed. Reg. 2956 (Jan 18, 2006).

33. In this notice of intent, the agencies stated that the CMP/EIS would, among other goals, "defin[e] a trail corridor that incorporates trail resource protection and desired visitor experiences." *Id*. 2956. The agencies noted that the CMP would address, "possible conflicts between off-highway vehicle use, energy development, and trail site and segment preservation, protection, and appropriate use, and conflicts between existing uses, future uses, and the preservation of trail viewsheds through visual resource management" and other issues to be identified during the public scoping period. *Id*. 2957.

34. Nineteen out of twenty other national historic trails have included NEPA analyses. (The 272-mile long Overmountain Victory National Historic Trail, established in 1980, is the only historic trail that did not.)

35. In August 2006, NPS and BLM published a report summarizing the public's comments, feedback, and input received during twenty-one EIS scoping meetings held in the spring of 2006 in states that the Old Spanish Trail crosses. BLM and NPS, *Scoping Report: Old Spanish National Historic Trail / Comprehensive Impact Statement* (August 2006). *See* 40 C.F.R. § 1501.9 (the Environmental Protection Agency's Council on Environmental Quality regulations regarding public and governmental engagement in the NEPA process). This scoping report made clear that the planning process would "include an environmental impact statement that will comply with the National Environmental Policy Act (NEPA) and the Council on Environmental Quality (CEQ) guidelines." *Id*. at 30. It also stated that the Environmental Impact Statement would develop and analyze "[a]

range of reasonable alternatives, including an alternative considering no action, as required by NEPA," with a draft of potential impacts of the alternatives to be presented "in a preliminary CMP/EIS, which the public will be asked to review in fall 2007." *Id*. The drafters additionally stated, "Comments on the preliminary CMP/EIS received from agencies and the public will be considered and incorporated into the Proposed CMP/EIS, to be completed in summer 2008. After a Governor's Consistency Review and public protest period, the BLM and NPS will issue a Decision Record and an approved CMP, scheduled for late 2008." *Id*.

36. According to an undated letter released by NPS, the two agencies thereafter developed several alternatives for detailed environmental analysis and completed a draft CMP/Environmental Impact Statement in 2011, three years past their target date of 2008. *See* https://parkplanning.nps.gov/projectHome.cfm?projectID=12591 (last accessed October 15, 2024). However, the letter states that the two agencies disagreed about whether an EIS was required, with NPS feeling that such analysis was appropriate "given the nature of previous CMPs." *Id*.

37. The CMP/EIS process ended there. To this date, it was never completed.

38. In 2014, NPS and BLM administrators created what they called a "comprehensive administrative strategy." U.S. Dept. of the Interior, NPS and BLM, *Old Spanish National Historic Trail Comprehensive Administrative Strategy* 23–29 (2017). The "Strategy" does not purport to substitute for a CMP; indeed, its Executive Summary acknowledges, "Section 5(f) of the [National Trails System] Act requires that a comprehensive plan be developed for all designated national historic trails. This administrative strategy will function as the core component of the planning portfolio for the Old Spanish Trail

comprehensive strategy, focusing on administration." *Id*., vii. This "Strategy" does not fulfill all the requirements of a CMP as set out in the National Trails System Act, nor was it submitted to Congress, as the Act requires for CMPs. It included no NEPA analyses, and did not establish a right-of-way for the Trail, which the authors stated would "be developed in future planning efforts." *Id*. at 17. *See also id.* at 16 (stating that "future planning" would include selection of a right-of-way after which "the BLM shall publish a Notice of Availability of the appropriate maps or descriptions in the Federal Register.").

## II.  NEGATIVE IMPACTS TO THE TRAIL CAUSED BY LACK OF CMP/EIS AND RIGHT-OF-WAY

39.  The lack of a CMP with full NEPA review and a designated right-of-way for the Old Spanish Trail has resulted in piecemeal development decisions that have been chipping away at the Trail's integrity for decades.

40.  The vast majority of land use proposals (both past and pending) on public lands on or near the trail are on BLM lands, with a few proposals on Forest Service land and some other federal agency authorizations such as Bureau of Reclamation and Federal Communication Commission projects.

41.  Many federal agency planning actions and use allowances such as oil and gas leasing, energy development, and motor vehicle allowances, have taken place throughout the almost twenty years that Defendants have failed to complete a CMP and create a right-of-way for the Trail. These include thirty-eight planning or use allowances that some of the plaintiffs in this lawsuit commented on or formally protested. These actions have taken place without a National Trails System Act right-of-way, without the guidance required to

be provided by a CMP, and without the comprehensive, cumulative NEPA analysis that would have accompanied a CMP.

42. The following is a partial list of actions, currently under consideration, for activities on federal land that impact the Old Spanish Trail. Had there been a CMP/EIS in place outlining acceptable and unacceptable impacts on the Old Spanish Trail and considering such impacts in a *cumulative* manner, this would have provided crucial guidance for smaller-scale NEPA analyses on individual projects like these. Instead, the actions below – like others that have been approved before them in the past twenty-two years since the Trail was designated and others currently under consideration not mentioned here – proceed without the necessary bird's eye view of how and whether individual activities might substantially interfere with the nature and purposes of the Trail as a whole. The actions listed all lack the National Trails System Act-required Secretarial finding that they "will not substantially interfere with the nature and purposes of the trail" pursuant to 16 U.S.C. §1246(c).

   a) <u>Implementation of the BLM Grand Junction Resource Management Plan amendment</u>. DOI-BLM-CO-G020-2022-001-RMP EIS (SEIS). This Resource Management Plan identifies federal lands within the BLM Grand Junction Field Area designated as open for federal fluid mineral leasing. Certain of these lands are on or adjacent to (within as little as 50 meters of) the congressionally designated North Branch Route of the Old Spanish Trail. This action invites unnecessary and inappropriate fluid mineral leasing speculation, and – based on many other past similar BLM allowances along the Trail – potential irreversible damage to the Trail's cultural and natural resources, values, and educational and

16

recreational opportunities. Plaintiffs PEER and John Hiscock submitted comments and a protest of this action. On October 16, 2024, BLM nonetheless proceeded to issue a record of decision on this plan (*available at* https://eplanning.blm.gov/eplanning-ui/project/2016085/570, last accessed Dec. 8, 2024), leaving the land open to potential oil and gas leasing.

b) <u>Finalization of the Final Programmatic Environmental Impact Statement and Proposed Resource Management Plan Amendments for Utility-Scale Solar Energy Development PEIS</u>. DOI-BLM-HQ-3000-2023-0001-RMP-EIS. This Programmatic planning EIS (and accompanying amendments to all BLM Resource Management Plans in eleven western states, including all of those crossed by the Old Spanish Trail), identifies and designates BLM federal lands which are open for utility scale solar development. This action invites unnecessary and inappropriate solar development speculation and may result in irreversible damage to the Old Spanish Trail's cultural and natural resources, values, and educational and recreational opportunities without proper analysis pursuant to the National Trails System Act and NEPA. Plaintiffs PEER, the Coalition to Protect America's National Parks, and John Hiscock – along with other groups such as Western Watersheds Project, Basin and Range Watch, and the Amargosa Conservancy – submitted comments and a protest to this action, and await a decision by BLM.

c) <u>Copper Rays Solar Project</u>. DOI-BLM-NV-S030-2022-0009-EIS (public comment period currently open through Dec. 19, 2024). This solar development project proposal lies on BLM lands in the Pahrump Valley of southwestern

Nevada, approximately 5-6 miles north of the congressionally designated Northern Branch of the Old Spanish Trail, and within the viewshed of the Trail. The proposal may result in irreversible damage to the Trail's cultural and natural resources, values, and educational and recreational opportunities without proper analysis pursuant to the National Trails System Act and NEPA

d) <u>Purple Sage Energy Center</u>. DOI-BLM-NV-S010-2022-0094-EIS (public comment period currently open through February 13, 2025). Also known as the Golden Currant Solar Project, this solar development project proposal lies on BLM lands in the Pahrump Valley of southwestern Nevada, on, and directly adjacent to the congressionally designated Northern Branch of the Old Spanish Trail, and within its viewshed. Like the other proposals, it may result in irreversible damage to the Trail's cultural and natural resources, values, and educational and recreational opportunities without proper analysis pursuant to the National Trails System Act and NEPA.

43. Unless the Court orders Defendants to establish a right-of-way and complete a CMP/EIS, this piecemeal development will continue unabated without the cumulative, wholistic consideration that Congress required in the National Trails System Act.

## FIRST CAUSE OF ACTION

**Defendants' Failure to Create and Submit to Congress a Comprehensive Management Plan for the Old Spanish National Historic Trail as required by the National Trails System Act Violates Section 706(1) of the Administrative Procedure Act**

44. Plaintiffs incorporate and re-allege all allegations set forth in the preceding paragraphs.

45. Pursuant to 16 U.S.C. § 1244(f), Defendants were required to submit a CMP for the Old Spanish Trail to Congress by September 30, 2005.

46. Almost 20 years later, this statutory duty has not been fulfilled, as Defendants have never created nor submitted to Congress a CMP for the Old Spanish Trail.

47. This constitutes an action required by the National Trails System Act and unlawfully withheld or unreasonably delayed, which therefore must be compelled pursuant to the Administrative Procedure Act § 706(1).

## SECOND CAUSE OF ACTION

**Defendants' failure to establish a right-of-way for the Old Spanish National Historic Trail and failure to publish notice of the availability of appropriate maps or descriptions in the Federal Register as required by the National Trails System Act Violates Section 706(1) of the Administrative Procedure Act**

48. Plaintiffs incorporate and re-allege all allegations set forth in the preceding paragraphs.

49. To date, Defendants have not established a right-of-way for the Old Spanish Trail, nor published notice of the availability of appropriate maps or descriptions in the Federal Register as required by 16 USC § 1246 (a)(2).

50. Today, over two decades after the designation of the Old Spanish Trail, this mandatory statutory duty remains unfulfilled, constituting an action required by the National Trails System Act and unlawfully withheld or unreasonably delayed, which therefore must be compelled under the Administrative Procedure Act §706 (1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that Defendants' failure to establish a right-of-way for the Old Spanish Trail and its failure to publish notice of the availability of appropriate maps or descriptions of the right-of-way in the Federal Register violates the National Trails System Act and is an action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act, 5 U.S.C. § 706(1);

B. Declare that Defendants' failure to create and submit to Congress the Comprehensive Management Plan for the Old Spanish Trail, required to be completed in 2005, violates the National Trails System Act and is an action unlawfully withheld or unreasonably delayed under the Administrative Procedure Act, 5 U.S.C. § 706(1);

C. Order Defendants to create and submit to Congress a Comprehensive Management Plan for the Old Spanish Trail including all the elements that the National Trails System Act requires, a right-of-way determination, and the required analyses under the National Environmental Policy Act by the earliest practicable date – but in no case later than one year from the Court's decision;

D. Enjoin Defendants from considering any development or use proposals that would affect federal lands within fifteen miles of either side of the Old Spanish Trail center line until Defendants establish a right-of way and complete and submit to Congress a Comprehensive Management Plan for the Old Spanish Trail.

E. Retain jurisdiction over this matter until Defendants have fulfilled their statutory and Court-ordered obligations;

F. Award Plaintiffs reasonable costs and attorneys' fees associated with this litigation under 28 U.S.C. § 2412; and

G. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted this ninth day of December 2024.

/s/ Laura Dumais
Laura Dumais, DC Bar No. 1024007
Public Employees for Environmental Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD 20910
(202) 792-1277 / ldumais@peer.org

*Counsel for Plaintiff*